MARIE C. SULLIVAN *vs.* RHODE ISLAND HOSPITAL TRUST COMPANY, Trustee *et als.*

MAY 26, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

Moss, J. This cause was begun by a bill in equity for the construction of a deed by which, in 1915, the Sullivan Investment Company, a Rhode Island corporation, purported to convey certain real estate in this state to James E. Sullivan "trustee," and his heirs and assigns forever. In the superior court, guardians *ad litem* for minor respondents and a representative of the possible interests of persons not ascertained or not in being were appointed; a decree *pro confesso* was entered against four respondents; the pleadings were closed and some evidence was introduced. Then the cause, being ready for hearing for final decree, was certified to this court for determination, as provided in general laws 1923, chapter 339, sec. 35.

At the date of the deed in question James E. Sullivan was a widower and continued so until his death in 1920,

having meantime made no conveyance of this real estate. By his will all his property passed in equal shares to his three sons, Robert J. B., Edmund J. and James B. The first named died in 1929, leaving by will all his property to his widow, the complainant. It is not in dispute that the property belonged to the grantor at the date of the deed; nor is it in dispute that if the deed conveyed a fee simple absolute to James E. Sullivan, as claimed by the complainant, it now belongs in equal undivided shares to her and her brothers-in-law, the above named Edmund J. Sullivan and James B. Sullivan. They and all other persons who would have any interests in the property under any other arguable view of the effect of the deed have been made parties to the cause and are represented therein.

The deed in question is in the usual form for a warranty deed conveying real estate in fee simple absolute, except in two respects, which have caused the complainant to seek to have it construed by this court. In the first place the word "trustee" is interlined after the name "James E. Sullivan" in the recital of the consideration paid. In the second place, just after the description of the real estate conveyed, is the following sentence: "The terms under which the grantee herein holds said property as trustee being the same terms and conditions under which he holds the real estate devised to him by the will of the late Alice M. Sullivan, which will is on file in the office of the Probate Clerk of the Town of Narragansett."

Alice M. Sullivan was the wife of James E. Sullivan. She died in 1909 leaving a will, duly probated, of which the pertinent provisions are as follows:

> "To my beloved husband, James E. Sullivan, for his own use and benefit, I bequeath and devise all the real estate of which I may be seized at the time of my decease, for and during the term of his natural life; and from and after his decease to the Rhode Island Hospital Trust Company in trust as follows:

"To pay over the net income of said real estate to my children then living, in equal shares, and, to the issue of any deceased child the share of such child, and in the event of the decease of any of my said children leaving no issue, then to pay the share of said deceased child to my surviving child or children, and upon the death of all of my said children to hold said real estate for a period of twenty-one years from the decease of the last surviving child, when the said real estate is to be divided between the heirs of my children, said heirs taking by right of representation and not *per capita*.

"I authorize and empower my said husband to sell said real estate or any part thereof, and in his discretion to invest the proceeds of any sale or sales made by him, holding said proceeds, or the property in which he may invest the same, as part of my real estate, the income thereof to be and to become the sole property of my said husband during his lifetime. . . .

"In the event of the death of all my children leaving no issue and after the death of my husband, James E. Sullivan, I devise said real estate to the heirs of my late father, Joseph Banigan."

In construing this deed in the light of these testamentary provisions, several additional facts, shown by the evidence, should be kept in mind. At the time of the death of the testatrix, the property in question was not owned by her, but by the Sullivan Investment Company, a family corporation, to which it had been conveyed by James E. Sullivan in 1900. The affairs of this corporation were liquidated voluntarily in 1922 and all its property distributed equally among the three sons of James E. Sullivan, who were then and from a date prior to 1915 had been the holders, in equal parts, of all its capital stock and had

constituted its officers. Its charter was forfeited in 1929, and has not been revived and its records have disappeared.

Until his death James E. Sullivan dominated and managed all the affairs of the corporation and his sons signed the deed as its officers because he told them to do so. There is no evidence as to whether or not he actually gave any consideration for the conveyance of the property to him by the deed in question; or if he did, as to what was the source of such consideration. It may possibly have been the proceeds of the sale by him of real estate devised to him by his wife. If so, there would be an obvious reason why he should not have this property conveyed to him as absolute owner, but should wish it to be so conveyed to him that it would be subject to all the same terms and conditions and final disposition as the real estate held by him by devise from his wife.

That of course is mere conjecture; but it is perfectly clear, from the language above quoted from the deed, that he did not intend that it should convey the property to him as full equitable as well as legal owner of it, nor did he intend that it should convey to him only a life estate, with power of sale and reinvestment, since it was obvious that it would convey to him a legal fee. On the contrary he clearly intended that it should convey the property to him and his heirs and assigns subject to something in the nature of a trust, the terms and conditions of which would be found in the devise of real estate to him in his wife's will; and he must have known that this devise provided, by way of a trust, for their children and their children's issue, after his death.

The vital question in the case is, then, whether the intended terms and conditions, under which the property was to be held, become sufficiently clear and definite, when the pertinent language of the deed is read and compared with that in the will, that they can be enforced. If they do, they must be enforced. If they do not, the intended trust fails. In the latter event, it would make no difference, in

the result, whether we hold that in such a case the grantee takes the property in fee, free and clear of any trust, or that there is a resulting trust in favor of the grantor in the deed. For, after the death of James E. Sullivan and the demise of the corporation, all the rights of both in the property became merged in his three sons, to the rights of one of whom the complainant has succeeded. If James E. Sullivan was the absolute owner of the property at his death, it passed to his sons by his will. If the corporation had the title in fee when its affairs were wound up and it ceased to exist, the property passed in equal undivided shares to the three sons as its sole and equal stockholders. 8 Thompson on Corporations, (3d. ed.), § 6507.

In determining the vital question of the construction of the above quoted language of the deed, we have received no assistance from any of the attorneys representing the parties, some of them adults and others minors, who have interests in the property if and only if it is held to be subject to the same trust as the real estate of the testatrix was made subject to, by the language above quoted from her will. Nor have we received any assistance from the attorney who was appointed to represent persons not ascertained or not now in being who might have interests under the same construction of the deed.

In this situation, however it may be with regard to the interests of the adults whose attorneys have given us no assistance, we conceive it to be clearly our duty to see that the interests of the minors and of persons not ascertained or not now in being are fully protected and that no fair and fully reasonable construction of the deed which will result in a valid trust of the property is overlooked.

The fundamental rule to be applied is well stated in *Gaddes* v. *Pawtucket Institution for Savings*, 33 R. I. 177, at page 186, as follows, and authorities are cited supporting the rule: "In construing a deed the object sought is to ascertain and give effect to the intention of the parties. The court, however, seeks only to translate the instrument

before it, not to create a new and different one. Accordingly the intention sought is only that expressed in the deed, and not some secret, unexpressed intention, even though the latter be that actually in mind at the time of execution. This is the fundamental rule of all judicial interpretation."

At page 187 of the same opinion is stated the following additional rule, which applies under certain circumstances and which is relied upon by counsel for the complainant in the instant case: "It is a well recognized rule that after having once granted an estate in a deed, the grantor cannot restrict or nullify it by a subsequent clause." We cannot see that this rule has any application to the deed now before us, because in the early part of the deed the grantee is described as "James E. Sullivan trustee," and thereafter is only referred to as "grantee," and, further on, the devise of real estate to him in the will of Alice M. Sullivan is referred to for the terms under which he is to hold the property as trustee. This makes the reference an inseparable part of the granting clause of the deed, which must be modified by the reference, if the intended meaning of the reference can be determined by construction.

The primary rule today for the construction of a deed is excellently stated in 8 R. C. L. 1037, "Deeds," § 93: "The primary rule to be observed, therefore, is that the real intention of the parties is to be sought and carried out whenever possible. . . . So, whatever may have been the earlier doctrine, it is now thoroughly settled that technical rules of construction are not favored, and must not be applied so as to defeat the intention. In modern times the more sensible rule obtains, in all cases to ascertain and give effect to the intention of the parties as gathered from the entire instrument, together with the surrounding circumstances, unless such intention is in conflict with some unbending canon of construction or settled rule of property, or is repugnant to the terms of the grant. Furthermore, the primary or dominant intent must prevail over a sec-

ondary intent, where the two are inconsistent, wherefore if two clauses are inconsistent they must be construed so as to give effect to the intention of the parties as collected from the whole instrument."

Nearly all the language above quoted from the will of Alice M. Sullivan is clear and definite. She first devised all her real estate to her husband for his own use and benefit for and during the term of his life; and from and after his death to the Rhode Island Hospital Trust Company in trust, primarily for the benefit of their children and such children's issue; and she later provided for a final gift over, absolutely, in the event of a total failure of issue, before final distribution of the trust property to them, the terms of the trust being clear, definite and valid.

This leaves for consideration a paragraph in the devise, of relevancy and importance in the present inquiry. In that paragraph she first authorized and empowered her husband to sell any of such real estate and in his discretion to invest the proceeds of its sale and then added the following clause, in which we have italicized the most pertinent words: . . . *"holding* said proceeds or the property in which he may invest the same, *as part of my real estate,* the *income* thereof to be and become the sole property of my said husband during his lifetime." It seems to us clear that, though the testatrix said nothing about what should become of the *principal* of such proceeds or of any investments of the same, made by her husband, she effectively manifested an intent that such principal, just like any of her real estate unsold, should pass, on her husband's death, to the Rhode Island Hospital Trust Company as a part of the trust estate provided for in the will; and that meantime he should hold it subject to that disposition of it on his death.

In other words, when she said that he was to hold such proceeds or investments "as part of my real estate," she meant that he should hold them as substituted for the real estate sold, and subject to the same trust, from and after his death, as her real estate was made subject to. Between

her death and his death his relation to all the real estate devised to him and the proceeds of the sale of any of it and any investments of such proceeds, while technically not that of a trustee, was substantially the same as if by the will the real estate had been devised to him, his heirs and assigns, in trust to hold and manage it, with power of sale and reinvestment, and it had been provided that during his lifetime he should have the use of any of the real estate and the net income of all the trust estate, and that after his death the net income and finally the principal of the trust estate should be disposed of as set forth in the will, with the Rhode Island Hospital Trust Company as his successor as trustee.

The deed now before us conveys the property, therein described, to him in fee, after describing him as "trustee," and then says, in substance and effect, that the terms under which he is to hold the property as trustee are "the same terms and conditions under which he holds the real estate devised to him by the will of the late Alice M. Sullivan."

The indications are that the draftsman of the deed did not have before him a copy of the will, but it is obvious that he understood that the grantee in the deed held the devised real estate, not as his absolute property, but subject by the will to certain terms and conditions, and that the real estate was subject to a trust set forth in the will. That the draftsman was laboring under a misunderstanding as to the grantee being trustee under the will is, in our judgment, of minor importance. Who is *trustee* under a trust is a secondary matter; the *trust* itself is the primary matter. No trust will be allowed to fail for want of a trustee.

To our minds the conclusion is clear, from the language above quoted from the deed, when read in the light of the language above quoted from the will, that the intent of the parties was that the property conveyed should be held by the grantee subject to the same terms and conditions and should be subject to the same trust, from and after his death, for the benefit of the children of his wife and himself and

the issue of such children, as the real estate devised to him by his wife was subject to. In other words, it was to be subject to such terms, conditions and trust in just the same way as, by the language of the will, above discussed, the proceeds of any sale of the devised real estate and any investments by him of such proceeds were to be held by him subject to the terms and conditions stated in the will with regard to the real estate, and were to be subject to the trust from and after his death.

It seems clear to our minds that this construction of the deed does no violence to its language, is definite and consistent, and has the great merit of carrying out the evident intent of the parties to the deed, instead of defeating their main intent, which any of the constructions contended for by counsel for the complainant would certainly do. Under this construction the property in question is subject to the trust set forth in the will as to the real estate devised. It is not quite so clear to us that the Rhode Island Hospital Trust Company is necessarily the trustee; but we hold that it is entitled to be the trustee, if it is willing to accept the trust. If it is not, a trustee should be appointed by the superior court.

We realize that, under the construction which we have adopted, the property or the proceeds of its sale by the trustee may be held in trust for a good many years before distribution can be made, but we are convinced that it was the intent of James E. Sullivan that it should be thus held in trust after his death, like the real estate devised by his wife, and that it is our duty thus to decide, without regard to our views as to the wisdom or unwisdom of that intent.

On June 1, 1936, the parties may present to this court for approval a form of decree in accordance with this opinion, to be entered in the superior court.

*Hart, Gainer & Carr*, Complainant's attorneys.

*Eliot G. Parkhurst*, guardian *ad litem* of John J. Banigan, Jr., Jean Banigan, Elizabeth Banigan, Joseph B. Banigan, Jr., Barbara Banigan and Walter Banigan.

*Edwards & Angell*, attorneys of record for Richard B. Banigan, John J. Banigan and Joseph Banigan.

*Tillinghast, Collins & Tanner*, attorneys of record of the Rhode Island Hospital Trust Company, Trustee.

*George Hurley, Walter V. Moriarty, Walter V. Connly*, attorneys of record for Edmund Sullivan and James B. Sullivan.

*Adler & Flint, F. Harlan Flint*, attorneys of record for John H. McElroy, Jr.