CRAWFORD REALTY COMPANY *et al. vs.* HASSIE OSTROW *et al.*

APRIL 10, 1959.

PRESENT: Condon, C. J., Roberts, Andrews, Paolino and Powers, JJ.

ROBERTS, J. This bill in equity was brought to enjoin the respondents from interfering with the complainants' use of certain passageways in the vicinity of property located on Weybosset street in the city of Providence. The cause was heard by a justice of the superior court, who thereafter entered a decree which granted relief as to one of the aforesaid passageways but denied the other relief sought. From said decree the complainants have claimed an appeal to

this court. Prior to the hearing in the superior court the National Furniture Distributors, the lessee of said company, was added as a party complainant and the Plantations Auto Park, Inc. was added as a party respondent.

The complainant Crawford Realty Company is the owner of property located on the southerly side of Weybosset street, which property is designated as lot No. 487 on assessor's plat No. 24. The complainant National Furniture Distributors is the lessee of the said property. The respondent Hassie Ostrow is the owner of three parcels of land located on the westerly side of Richmond street and designated as lots Nos. 47, 447, and 492 on the aforesaid assessors' plat No. 24. The respondent Max Ostrow is the operator of a parking lot on said three parcels.

The bill of complaint alleges that the westerly side of the property owned by complainant Crawford Realty Company adjoins a "private gangway" which extends southerly from Weybosset street and that said complainant by grant possesses certain rights in this "private gangway." It is further alleged that "there extends westerly from Richmond Street a public street designated as Read Street," which is also designated on plat No. 24 and which bisects the parcels owned by respondent Hassie Ostrow. The bill alleges that Read street, extending westerly from Richmond street, proceeds to a point of intersection with the aforesaid "private gangway" running southerly from Weybosset street, and that "the respondents have wrongfully caused obstructions and suffered obstructions to be placed upon the said aforementioned gangways and upon Read Street * * *." It is prayed that respondents be enjoined from obstructing complainants' use of the gangway and of Read street.

According to evidence adduced at the hearing, prior to the year 1795 the lot now owned by Crawford Realty Company and the lots now owned by respondent Hassie Ostrow were all part of one parcel then owned by Sarah Richmond. In the year 1795 William Richmond, one of the heirs of

Sarah Richmond, brought an action for partition of this parcel. As a result of that suit the property of Sarah Richmond was divided into five parcels, three of which abut on the southerly side of what is now Weybosset street. In that partition suit reference is made to a passageway separating the three parcels abutting on Weybosset street from the other two parcels. The passageway referred to is Read street. It is not clear from the evidence whether the establishment of Read street arose out of the partition suit or had been made prior thereto, but it is clear that Read street existed as a passageway of some kind in 1795. There was also evidence that prior to 1795 there existed a plat upon which Read street was laid out through the property of Sarah Richmond, but witnesses who had searched the title were unable to find such plat. However, there was introduced in evidence a plat of the year 1798 which clearly shows the passageway known as Read street.

The evidence further shows that in 1801 William Richmond, the owner of a parcel which abutted on the southerly side of what is now Weybosset street and on the northerly side of Read street, entered into an agreement with Marvin Morris whose property adjoined the westerly side of the property of William Richmond. This agreement, which was subsequently recorded, established a private gangway between the property of William Richmond and that of Morris. The gangway referred to by the parties herein as the Richmond-Morris gangway extended southerly from Weybosset street for a distance of approximately 135 feet to a point near the westerly end of Read street.

The complainants sought to establish that Read street, so called, over the years has been accepted by the public as a public street. It was shown that Read street has never been taxed by the city authorities; that pipes were laid therein by the city; and that at various times it has been used for pedestrian and vehicular travel. This evidence

was offered as proof of public acceptance of the dedication of Read street allegedly made prior to the year 1795.

The parcel of land which by reason of the partition suit of 1795 became the property of William Richmond was subsequently subdivided. Lot No. 487 on assessor's plat No. 24, now the property of complainant Crawford Realty Company, comprises the northerly part of the property of William Richmond. Said complainant's property therefore abuts upon the Richmond-Morris gangway but not upon Read street. The complainants sought to establish that their right to the use of the "private gangway" derives from the Richmond-Morris agreement of 1801 and that their right to the use of Read street derives from the dedication and acceptance of Read street as a public way.

The trial justice ruled that complainants were entitled to the free and unobstructed use of the Richmond-Morris gangway as a result of the agreement of 1801. With respect to Read street, he found "that there was a dedication of what is now termed Read Street to and for the use of the public and that through the years there has been a degree of acceptance by those persons who actually built and lived on either side of the street and by those persons who had business with such residents." He held, however, that it had never been accepted as a street in the statutory sense and that "In the opinion of the Court it is more properly termed a private way." The trial justice found that the dedication to the public use occurred "prior to the partition suit of 1795 or by reason of that suit * * *." He also found as a fact that the existence of a plat was proved even though the plat itself could not be found. He concluded that although complainants had a legal right to the use of the Richmond-Morris gangway, there is no public right to the use of Read street.

The complainants argue that notwithstanding the non-acceptance of Read street by the public they have a private right to the use of Read street. They urge that the dedi-

cation of Read street to the public use in 1795 or prior thereto created an easement therein appurtenant to the land presently owned by complainant Crawford Realty Company and that this easement entitles complainants to the use of Read street even if it is merely a private way. The trial justice rejected this contention stating: "Crawford Realty Company as the owner of Lot 487 is not the owner of land abutting on Read Street * * * and therefore is not in a position to complain of any obstruction on Read Street as it would be if it were such abutting owner."

The complainants' reasons of appeal are limited to the rulings of the trial justice with respect to the use of Read street. The respondents have not appealed from the granting of relief with respect to the Richmond-Morris gangway. Nor have respondents challenged the finding that there was a valid dedication of Read street to the public use. Therefore, the only issues before us on this appeal relate to the status of Read street and complainants' right to free travel thereon.

The complainants' position is twofold. First, they contend that the trial justice erred in ruling that Read street had not been accepted by the public. They urge that his conclusions with respect to public acceptance were based upon a misconception of what is legally required to prove such acceptance and that the evidence presented herein is sufficient for that purpose. Secondly, complainants argue that the uncontradicted evidence establishes an easement appurtenant to their land; that this easement has never been extinguished; and that they have title thereto regardless of whether Read street is a public or a private way.

Because we agree with complainants' contention that they possess an easement of way in Read street by reason of Crawford Realty Company's ownership of lot No. 487, we find it unnecessary to review the trial justice's conclusion that Read street was not accepted by the public. For the purposes of this appeal, therefore, we assume without

deciding that Read street is a private way; that it was dedicated to the public use in 1795 or prior thereto; but that such dedication has never been accepted by the public. On this view we shall limit our consideration to the existence of a private right of way in Read street.

The trial justice held that complainants did not have an easement in Read street because their property did not abut upon the street in which such easement is alleged to exist. His conclusion appears to be that a private way exists for the benefit of adjoining landowners only. In their brief and argument before us respondents relied upon substantially the same reasoning. It is contended that since Crawford Realty Company never received an easement in Read street by express grant and since there is no basis for implying an easement in favor of property which does not abut the way, the evidence indicates no means by which complainants could have obtained a right in Read street. We are unable to accept this contention.

It has been held in this state that where there is a dedication of property on a plat as a public way, the owners of the adjoining land obtain a private right therein even if the dedication is never accepted by the public. *Chapin v. Brown,* 15 R. I. 579; *Thaxter v. Turner,* 17 R. I. 799; *Allaire v. City of Woonsocket,* 25 R. I. 414.

In *Chapin v. Brown, supra,* we stated at page 584 that the existence of the street "operates by way of implied covenant, implied grant, estoppel, or dedication, whichever way of operation may be the truer * * *." In the instant case the trial justice found upon competent evidence that prior to 1795 a plat was in existence and that in the year 1795 Read street was a passageway. It seems apparent that after the partition in 1795 the heirs of Sarah Richmond, who were owners of land abutting Read street, each had a right of way therein. From the nature of the property it is equally clear that the rights of way possessed by the heirs of Sarah Richmond were easements appurtenant to

their land.  See *Cadwalader* v. *Bailey*, 17 R. I. 495.  Upon the facts herein this conclusion also follows from the trial justice's finding that a private way had been established.

It is not disputed that at the time Read street was established, the property owned by complainant Crawford Realty Company was part of a larger parcel which abutted on the dedicated way.  The division of this property occurred only after Read street had been in existence for many years.  Thus lot No. 487, now owned by said complainant, was a part of the property which abutted on Read street when it came into being as a street.  It is well settled that an easement appurtenant to land exists for the benefit of the dominant tenement as an entirety and not solely for any particular part thereof.  17A Am. Jur., Easements, §151, p. 755.  The easement which was appurtenant to the land of William Richmond in 1795 clearly accrued to the benefit of that part of his land which is now owned by Crawford Realty Company.  Once an easement appurtenant has been established it becomes an incident of possession of the dominant tenement and it passes automatically with any effective transfer of the land.  2 American Law of Property, §8.71, p. 282; 3 Tiffany, Real Property (3d ed.), §761, p. 212.

"If a dominant tenement is subdivided between two or more owners, the easements appurtenant to it become subdivided and attach to each separate part of the subdivided dominant tenement unless this result is prohibited by the terms of its conveyance."  2 American Law of Property, §8.74, p. 285.  See also 3 Tiffany, Real Property, *supra,* §809, p. 343; 5 Restatement, Property, §488, comment b, p. 3037.  This is true even where, as in the instant case, the subdivision separates one of the subdivided parts from the passageway.  *Phoenix National Bank* v. *United States Security Trust Co.,* 100 Conn. 622; 8 A.L.R. 1368.  The owner of the dominant tenement may extinguish the easement appurtenant by specifically excluding it from a con-

veyance of the dominant tenement. *Cadwalader* v. *Bailey, supra.* There is no evidence in this case that the right in question was ever extinguished in this manner, nor do we perceive herein any other basis upon which it could be concluded that the easement appurtenant to complainant Crawford Realty Company's lot was ever destroyed.

In some circumstances a division of the dominant tenement may have the effect of extinguishing an easement appurtenant by rendering the easement of no value to the land. See *Dawson* v. *St. Paul Fire & Marine Ins. Co.,* 15 Minn. 136. If the land is so divided that a portion thereof is completely deprived of access to the passageway, the easement can no longer be used for the benefit of the subdivided portion and thus it is extinguished. *Johnson* v. *Grant,* 20 R. I. 174. However, in order for the easement to be so extinguished it must appear that the owner of the subdivided portion has no legal means of reaching the passageway. As long as there is some physical connection between the lot and the passageway the easement is still of value and it is not destroyed; it makes no difference that the land does not abut upon the way. *C. B. Alling Realty Co.* v. *Olderman,* 90 Conn. 241; 17A Am. Jur., Easements, §151, p. 756. See also *Dawson* v. *St. Paul Fire & Marine Ins. Co., supra.* In the case at bar there has always been a legal means of access from Crawford Realty Company's lot to Read street by reason of the Richmond-Morris gangway. Therefore, the use of Read street has always been available for the benefit of lot No. 487.

It is not disputed that complainants have the right to use the Richmond-Morris gangway which extends southerly from Weybosset street. The respondents have argued that there is no evidence of an intersection between the said gangway and Read street and thus complainants have not proved their access to Read street. However, an examination of the trial justice's rescript indicates a finding of fact that the gangway extends "nearly 135 feet to Read

Street * * *." Under our familiar rule his finding will not be disturbed unless it is clearly wrong. *Sal's Furniture Co.* v. *Peterson*, 86 R. I. 203, 133 A.2d 770.

Upon a careful reading of the transcript we cannot say that the aforementioned finding of fact was clearly wrong. Evidence was admitted of a survey made of this property by the city of Providence which definitely shows an intersection between the Richmond-Morris gangway and Read street. Therefore, we are of the opinion that there is sufficient substantiation for complainants' contention that the gangway in which they clearly possess an easement provides them with a means of access to Read street. In similar circumstances it has been held that an easement was *created* in favor of nonabutting land. *Fox* v. *Union Sugar Refinery*, 109 Mass. 292. See also *Chapin* v. *Brown, supra*. In the case at bar it is clear that the existing easement was not *extinguished* by the division of the dominant tenement.

Having concluded that the complainants have an easement of way in Read street, it is our opinion that they are entitled to equitable relief with respect thereto. In his rescript the trial justice stated that the complainants had failed to show sufficient damage to justify the issuance of an injunction. We are unable to agree with this statement. The uncontradicted evidence shows that respondent Max Ostrow has been using Read street for the parking of cars and that the extent of this use has been such as to virtually prevent travel thereon. There is practically little difference between the obstructions in this case and the maintenance of a gate, which was enjoined in *Chapin* v. *Brown, supra*. The obstruction of the complainants' right of use herein is sufficient to satisfy the requirement that the interference with the easement must be substantial before an injunction will issue. *Bentley* v. *Root,* 19 R. I. 205.

The complainants' appeal is sustained, the decree appealed from is reversed, and on April 17, 1959 the parties

may present for our approval a form of decree, in accordance with this opinion, for entry in the superior court.

ANDREWS, J., did not participate in the decision.

### ON MOTION FOR REARGUMENT.

APRIL 15, 1959.

PER CURIAM. After our decision in the above case the respondents asked and received permission to file a motion for reargument. Pursuant to this permission they have filed such a motion, setting out therein certain reasons on which they base their contention that justice requires a reargument of the case.

We have carefully considered those reasons and we are of the opinion that they are without merit.

Motion denied.

*Russell C. King, Joseph L. Breen, Norman H. Mann,* for complainants.

*Leo M. Cooney,* for respondents.