376 A.2d 1368

Antone S. Thomas *et ux. vs.* James L. Ross *et ux.*

AUGUST 19, 1977

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J.   This is a civil action brought in Superior Court to enforce an easement to pass over the defendants' property in Little Compton. The plaintiffs, Antone S. and Mary S. Thomas, sought damages and injunctive relief against James L. and Kathleen F. Ross, who had erected obstructions at each end of the claimed easement. The defendants denied the plaintiffs' claim of an easement and filed a counterclaim and third-party complaint against their grantors, Mary S. Thomas and two others, seeking declartory and injunctive relief. After a trial without a jury, judgment was entered denying and dismissing the plaintiffs' complaint and granting the relief sought by the defendants. From this judgment the plaintiffs and the third-party defendants now appeal.

In order to explain more easily the several conveyances which led to the present controversy we attach as Appendix

A a diagram of the area showing the various lots and lettering them roughly as they were lettered in the survey maps which were admitted as evidence. The disputed easement is located between 3 and 4 on that diagram and is shown by slanted lines. As indicated, there is a shoreline on the southeast side of the tract and a public road, Grange Avenue, on the northwest.

The parcels of land involved in this case were originally part of a larger tract belonging to a Manuel DeSilveira. He purchased the property from a Brownell and a Howard in separate transactions early in this century. The deeds in those early conveyances contained provisions granting or reserving various rights-of-way for assorted purposes, but none of these old rights-of-way seem to have survived to the present except for one reserved for the members of a certain family to pass to their ancestral cemetery, lot F. Some of these rights-of-way have been resurrected in recent years as the DeSilveira tract has been conveyed out to different grantees.

The first conveyance from the large tract came in 1956 when John C. and Ruth C. Howland purchased lot L. A provision in their deed made the lot subject to the right-of-way bounding it, evidently one of the old rights-of-way referred to above. This right-of-way is marked on the appendix map from 1 to 2.

In that same year plaintiff Mary Thomas purchased lot I, but that parcel was evidently not part of the DeSilveira tract.

In 1958 Manuel DeSilveira conveyed his entire tract minus lot L to two trustees, Philip B. Wilbur and Philip W. Almy, Jr., who are third-party defendants here. These trustees have since conveyed most or all of the lots to different buyers some of whom have reconveyed their lots to other buyers. We will, however, only refer to those con-

veyances which are relevant to determining whether plaintiffs have rights over the claimed easement.

In 1959 the trustees conveyed the lot marked Ross #1 to defendants. That deed referred to a plan of the area drawn up by a Leo W. Grenier and said this plan was to be filed with the town clerk, as it eventually was. It was subsequently revised, but the revisions are not relevant to this case. The deed to Ross #1 is reproduced as appendix B with the relevant paragraphs lettered "a" to "d". It granted to defendants the following easements: (1) in paragraph "b," a 20-foot-wide right-of-way, as shown on the Grenier plan, going north and west to Grange Avenue, marked 5 to 8 on the appendix map; (2) a way for defendants to pass to the shore, grantors reserving the right to set the exact route at their absolute discretion (paragraph "c"); and (3) the right to pass over any established rights-of-way to which the grantors' lands were subject insofar as the grantors had the right to grant (paragraph "d").

Of greatest significance for the present case is this language of paragraph "a" which specifically stated that the Grenier plan was in error where it showed an easement along the eastern boundary of Ross #1, from 3 to 4 on the appendix map:

> "Although said plan shows a right of way located and bounding easterly on the granted premises, it is not the intention of the grantors to create by this instrument or recording of said plan any such right of way. The right of way is shown thereon in error, and is to be excepted from said recorded plan."

Thus, at the time defendants bought Ross #1 the contested easement did not exist.

On June 27, 1961, the trustees, as required by the terms of their trust indenture, conveyed to plaintiff Mary Thomas an undivided one-half interest in the property they still held at that time, that is, the whole of the DeSilveira tract except

for lots C, D, L, M and Ross #1, which had been conveyed previously. On that same day, lots C, D and Ross #1 were conveyed back to the trustees, then reconveyed to the same grantees in order to correct errors of description in the first deeds. These corrective deeds contained the same language quoted above granting right-of-way but deleting the easement from 3 to 4 shown on the Grenier plan.

On September 1, 1961, three transactions were carried out and the documents recorded in the following order:

(1) The trustees and Mary Thomas exercised the right they had reserved in conveying Ross #1 to defendants and determined defendants' right-of-way to the shore. The route was described as a 20-foot right-of-way, the western line of which was defined as follows:

> "Beginning at the northeasterly corner of said Ross land conveyed by said deed dated June 27, 1961, thence southerly bounding westerly on said Ross land 137.49 feet, more or less, thence continuing, as shown on the plan entitled 'Certain Land in Little Compton, Rhode Island, Scale 1" indicates inches equals 100' 26 Sept. 1956, Drawing Number S-1-83' recorded in the records of Land Evidence of said Little Compton in Book 2, page 65, southerly 112 feet, more or less, bounding westerly on land now or formerly of Mary S. Thomas, and then further southerly 413 feet, more or less, bounding westerly on land now or formerly of Howland; thence easterly and southerly along existing right of way."

(The 1956 plan referred to was of the DeSilveira tract. It showed a right-of-way as indicated on Appendix A from 1 to 3.) The way granted thus goes from 1 to approximately 4 on the appendix map. It includes parts of old rights-of-way and also includes most of the easement being claimed by plaintiffs in this action. This document represents the first rights granted to any of the parties to pass along 3 to 4.

(2) The trustees and Mary Thomas conveyed lots B, E and G to Johns and Adeline Congdon. That deed is reproduced as Appendix C with certain relevant paragraphs lettered "a" through "e." It reserved in paragraph "b" and created in "c" rights of way to lot F, the cemetery, for use by the family whose members rested there. In paragraph "a" the deed referred to a second plan drawn up by Leo Grenier for Johns Congdon which, like the earlier Grenier plan, was recorded and showed an easement to Grange Avenue, as indicated from 3 to 8 on Appendix A. In paragraph "d" this deed described the southern and western boundaries of lot G as the right-of-way from 5 to 7. The boundary along the eastern side of Ross #1, however, was described as Ross #1 itself although the plan referred to showed an easement along there, too. In any case, paragraph "e" contained the following language;

> "Reserving unto the grantors, their heirs and assigns, in common with the grantees, their heirs and assigns, a right of way to pass and repass on foot or with vehicles over a twenty (20) foot right of way lying in Lot G next easterly of said Ross premises as delineated on the plan of said Congdon premises above referred to."

It is this right-of-way from, 3 to 4 on the appendix map, that plaintiffs claim in the present case.

(3) Finally on the same day the Congdons and the Rosses signed as agreement regarding their respective rights-of-way. The Condgons were evidently concerned about possible claims of easements over their land that the Rosses might raise under their deed's blanket conveyance of rights to any established ways over the grantors' land, which at that time included the Condgons' lots. The Rosses agreed to yield any rights over the Condgons' parcels except for the way to Grange Avenue, 3 to 8 in Appendix A. In exchange the Condgons granted the use of the 20-foot way from 3 to 4. The agreement referred to the plan drawn by Grenier for Congdon in defining these ways.

In October 1961 the trustees conveyed their one-half interest in lots J and H to plaintiffs. (Plaintiff Mary Thomas, of course, already owned the other half interest.) That deed contained the following language of limitation and conveyance:

> "Subject to all rights of way of record.
>
> "Together with the right to pass and repass by foot or with vehicle over an existing twenty-foot right of way running from Grange Avenue to the granted premises insofar as the grantors have the right to so grant."

Finally on July 29, 1968, the Congdons conveyed lot G to the Rosses "together with the rights and subject to certain rights of way referred to in title deeds." This conveyance put the Rosses in their present position as owners of the land over which the claimed easement passes.

Prior to their purchase of lot G, defendants had no knowledge of any claims by plaintiffs of a right to pass over the contested way. It was not long before they became aware of the claims and became concerned that other property owners in the area might also claim a right to pass and might, by exercising the right, effectively divide the two lots owned by the Rosses. Such an eventuality could be a particular problem to them since deed restrictions prevent them from building on the larger lot G for one hundred years. To prevent this division of their lots, defendants erected barricades at both ends of the contested easement. At one end they placed five stones about one and one-half feet in diameter in a gateway. At the other end they strung a piece of cable. These actions were taken for the admitted purpose of blocking access by plaintiffs to lots J and H from Grange Avenue.

Unable to use the easement because of the obstacles, plaintiffs brought this action alleging that defendants failed and refused to remove the barricades across the right-of-

way. The plaintiffs based their claim on the language of the deeds to the relevant parcels and sought (1) a court order requiring the Rosses to remove the blockade, (2) an injunction against future interference with plaintiffs' right to pass, and (3) damages of $10,000.

In answering the complaint, the Rosses essentially asserted the lawfulness of their barricading the way based on their reading of the deeds. In addition, the Rosses filed a counterclaim and third-party complaint against their grantors, plaintiff Mary Thomas and Philip Wilbur and Philip Almy, the two trustees of Manuel DeSilveira. The Rosses sought (1) a declaration that those three persons have and had no right to grant access over the disputed way and (2) an injunction to prevent them from granting any such access in the future. The Rosses based this action again on their reading of the deeds and also on an alleged violation of town subdivision regulations in the attempted grant of the easement.

Mary Thomas and the third-party defendants moved to dismiss defendants' complaint. They disagreed with the Rosses' reading of the deeds. They also denied any violation of subdivision regulations in creating the easement and asserted that in any case the Rosses were estopped (1) from relying on any violation of the subdivision regulations and (2) from denying the validity of the title to their own real estate in contesting plaintiffs' title to the right-of-way.

At trial, answers to interrogatories, a deposition and various admissions were filed and numerous deeds to the lots of the DeSilveira tract were admitted as evidence. The trial justice examined the extensive materials and also viewed the premises and decided that plaintiffs had failed to meet their burden of proving the existence of their right to pass over defendants' land. In this decision he referred specifically to the first plan, as revised, drawn up by Leo Grenier, and he noted defendants' deed to Ross #1 which, as discussed above, stated that the Grenier plan was in error

where it showed an easement along the eastern boundary of Ross #1 and that the parties did not intend to create such an easement. The trial justice thus entered judgment denying and dismissing plaintiffs' complaint and granting defendants' request for declaratory and injunctive relief. It is this judgment which is now on appeal.

Because the trial justice decided that no easement was created for plaintiffs' benefit by the deeds, he did not reach plaintiffs' damage claim or estoppel arguments, nor did he consider defendants' claim that any such easement was unenforceable under the town's subdivision regulations. This appeal, then, is concerned strictly with the construction of the deeds upon which plaintiffs base their claim.

After reviewing the documents in the record, we have concluded that the controlling language is found in the deed of September 1, 1961, Appendix C, in which the trustees and Mary Thomas conveyed lot G to the Congdons, defendants' predecessors in title. As indicated above, that deed contained a provision (paragraph "e") reserving for the grantors and their heirs and assigns a right to pass over a 20-foot way along the eastern boundary of Ross #1.

No evidence was offered to the trial court to indicate that this language of reservation is reasonably susceptible to more than one interpretation or should be read in any but the ordinary sense, if such evidence would be admissible here under the parol evidence rule. *See, e.g., Estate of Russell,* 69 Cal.2d 200, 208-13, 444 P.2d 353, 359-62, 70 Cal. Rptr. 561, 567-70 (1968). We therefore read the language in its ordinary sense. From that viewpoint the reservation is unambiguous, and its meaning is thus a question of law. 6 Thompson, *Real Property* §3094 at 807 (Grimes repl. 1962).

The object sought in construing this reservation in the Congdons' deed is to ascertain and give effect, insofar as the rules of law will permit, to the intention of the parties. *Paw-*

*tucket Mach. & Supply Corp.* v. *Monroe,* 73 R.I. 162, 164, 54 A.2d 399, 400 (1947); 6 Thompson, *supra* §3092 at 795-96. In construing the reservation, however, we seek only that intention expressed in the instrument and not some undisclosed intention that the parties may have had in mind.[1] *Pawtucket Mach. & Supply Corp.* v. *Monroe, supra,* at 164-65, 54 A.2d at 400; *accord, Sullivan* v. *Rhode Island Hosp. Trust Co.,* 56 R.I. 253, 258-59, 185 A. 148, 150 (1936); *see also Flanagan* v. *Kelly's Sys. of New England, Inc.,* 109 R.I. 388, 392-3, 286 A.2d 249, 251 (1972).

The language of the deed to the Congdons clearly expressed the intent of the grantors as owners of lots J and H to reserve for themselves and their successors the right to pass from their lots over lot G. This right to pass is presumed to be appurtenant, *Sullivan Granite Co.* v. *Vuono,* 48 R.I. 292, 295, 137 A. 687, 688 (1927), and in this case, construing the deed as creating an appurtenant easement is consistent with the nature of the right created and with the intention of the parties creating it. *Id.; accord, Khouri* v. *Dappinian,* 46 R.I. 163, 165, 125 A. 268, 269 (1924); 2 Thompson, *supra* §334 at 146-47 (Grimes repl. 1961). The benefit thus passes automatically with any effective transfer of lots J and H, the dominant estate, *Crawford Realty Co.* v. *Ostrow,* 89 R.I. 12, 19, 150 A.2d 5, 9 (1959), unless

---

[1]The defendants argue in their brief that construing the reservation in the present case requires reading all the deeds to the various lots together and considering all the surrounding circumstances existing when the reservation was drafted in order to ascertain the parties' intent. To support their argument, the defendants cite *Picerne* v. *Botvin,* 76 R.I. 422, 71 A.2d 773 (1950), and *Gonsalves* v. *DaSilva,* 76 R.I. 474, 72 A.2d 227 (1950). In both of those cases, however, the court was required to construe reservations of easements where circumstances had changed after the executions of the deeds but where the reservations did not specifically encompass the new situations. In the present case there were no such changes of circumstances.

Furthermore, in neither of the cited cases was a party attempting to engraft an unexpressed intent onto the language of the reservation or to limit clear and unambiguous language by resort to outside circumstances as the defendants here are attempting to do.

specifically excluded from the conveyance. *Id.* at 19-20, 150 A.2d at 9. The only conveyance of lots J and H since the easement was reserved was the transfer to plaintiffs of the trustees' half interest in the lots, Mary Thomas already owning the other half interest. That deed included the right to pass to Grange Avenue "insofar as the grantors have the right to so grant" and thus the conveyance not only did not extinguish the easement but actully conveyed it specifically to plaintiffs although in a release form.

Similarly, when the Congdons conveyed lot G to defendants the burden of this easement was conveyed not only by operation of law, 2 Thompson, *supra,* but also by express provision in the deed which said that the land was "subject to certain rights of way referred to in title deeds."

The plaintiffs, then, as owners of lots J and H, have the legal right to pass over the claimed easement on foot or with vehicles as reserved in the deed to the Congdons. As indicated above, because the trial justice found there was no easement granted or reserved in the deeds, he did not reach the other questions raised by the parties in their pleadings. We therefore remand the case for consideration of those issues.

The plaintiffs' appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court for further proceedings.

*Edwards & Angell, John H. Blish,* for plaintiffs.

*Timothy J. McCarthy,* for defendants.

242

*Appendix A*

Not drawn to scale. Easements created by deeds discussed in opinion are shown by darker lines (1 to 8). Disputed portion is marked by slanted lines.

## *Appendix B*

KNOW ALL MEN BY THESE PRESENTS That we, PHILIP B. WILBUR and PHILIP W. ALMY, JR., both residing in the Town of Little Compton, County of Newport, State of Rhode Island, Trustees under a Written Declaration of Trust dated August 4, 1958, made by Manuel De Silveira, by the power conferred by said Indenture of Trust and by every other power us thereunto enabling, for Ten Dollars and other valuable considerations to us paid, grant to JAMES F. ROSS and KATHLEEN F. ROSS, husband and wife, as tenants by the entirety, residing in Providence, in the State of Rhode Island, a certain estate situated in Little Compton, in the County of Newport and State of Rhode Island, and the buildings and improvements thereon erected, with the exception specified below, bounded and described as follows:

> Beginning at a point marked by a drill hole in an east-west stone wall marking the southerly boundary of Lot D as shown on Plan hereinafter referred to and the northerly boundary of the property now or late of Antone S. and Mary S. Thomas, said drill hole being one hundred forty-eight and 50/100 (148.50) feet measured along the center line of said east-west stone wall and the extension thereof in a generally easterly direction from the intersection of the said center line of the east-west stone wall and the easterly boundary of Grange Avenue, said point being the southwest corner of the property described herein and the south east corner of said Lot D; thence extending in a generally EASTERLY direction along the center line of the aforesaid east-west stone wall, bounding southerly on land now or late of Antone S. and Mary S. Thomas, two hundred eight and 82/100 (208.82) feet to a point marked by a drill hole, thence turning an interior angle of $92^0$ $10'$ and extending in a generally NORTHERLY direction bounding on further lands of the grantors one hundred seventeen and 37/100 (117.37) feet to a point; thence turning an interior angle of $96^0$ $24'$ and extending in a generally WESTERLY direction bounding northerly on a twenty foot right of way one hundred ninety-five and 47/100 (195.47) feet to a point marked by a bolt in a north-south stone wall, thence continuing in the same direction on the same line bounding northerly on other land of the grantors nineteen and 74/100 (19.74) feet to a point; thence turning an interior angle of $89^0$ $38'$ and extending in a generally SOUTHERLY direction bounding westerly on further land of the grantors one hundred thirty-six and 80/100 (136.80) feet to the point of beginning. Containing 25,815 square feet, more or less.

There is excepted from the granted premises a frame one story garage building and the grantors shall have the right to enter upon the granted premises and remove said building within two years from the date of this instrument. The grantors covenant with the grantees that they leave that portion from which the building is removed in a neat and orderly condition. Upon the failure of the grantors to remove said building within said two years, the same shall become the property of the grantees.

[a]     The aforedescribed premises is shown on Plan of Land surveyed for Manuel De Silveira located in Little Compton, R.I., Leo W. Grenier, 49 Purchase Street, Fall River, Mass., June 30, 1959, Scale 1″ = 30′, which plan is to be filed herewith in the Town Clerk's Office of the said Town of Little Compton. Although said plan shows a right of way located and bounding easterly on the granted premises, it is not the intention of the grantors to create by this instrument or recording of said plan any such right of way. The right of way is shown thereon in error, and is to be excepted from said recorded plan.

[b]     Together with a right to pass and repass, by foot or with vehicles, in common with the grantors and others who may be granted similar rights and privileges over a twenty (20) foot right of way running from Grange Avenue to the granted premises, as shown on the aforementioned plan, but its termination on the east being the northerly extension of the easterly line of the granted premises. It is the intention of the grantors by the above description to convey the fee of the land to the middle line of said right of way subject to the rights of the grantors, and other who may be granted the rights and privileges by the grantors to use the right of way. The grantors shall construct on said right of way a twelve (12) foot wide travelled surface of gravel. After such construction by the grantors, there shall be no obligation upon said grantors to maintain or repair said right of way.

[c]     The grantors further grant to the grantees, a right of way to pass and repass by foot or with vehicles from the granted premises over other land of the grantors to a point thereon nearest to the shore; the location, route or routes to be determined by the grantors in their absolute discretion. The right to use said way, ways or routes to be in common with the grantors and others who may be granted similar rights and privileges by the grantors, their successors and assigns.

[d]     The grantors further grant to the grantees the right to pass and repass, by foot or with vehicles, over any and all established rights of way over land owned by them as Trustees under said Written Declaration of Trust above referred to, or as assignees of of their predecessors in title, insofar as the grantors have the right so to grant.

The grantors further grant to the grantees the right to draw a reasonable supply of water from a well located on said Lot D, as shown on the aforesaid Plan, in any event until October 1, 1960, and said right shall continue until October 1, 1961, unless said Lot D has been sold by the grantors previous to that date. Should said Lot D be sold by the grantors previous to October 1, 1960, the right shall terminate on October 1, 1960; should the sale be after October 1, 1960, and before October 1, 1961, the right shall terminate on date of conveyance of said Lot D.

The grantees further shall have the right to enter upon premises of the grantors to lay pipe to well and maintain and repair the same.

Taxes assessed for the year 1959 to be paid by the grantors.

WITNESS our hands and seals this 12th day of August A.D. 1959.

Philip W. Almy Jr.

Norman F. Smith        Philip B. Wilbur

TRUSTEES

$4.95 in Documentary Stamps affixed.

STATE OF RHODE ISLAND
COUNTY OF NEWPORT

In LITTLE COMPTON on the 12 day of August A.D. 1959, before me personally appeared the above-named PHILIP B. WILBUR and PHILIP W. ALMY, JR., TRUSTEES, to me known and known by me to be the parties executing the foregoing instrument, and they acknowledged said instrument, by them executed, to be their free act and deed.

Norman F. Smith<br>
Notary Public<br>
My commission expires June 30, 1961

Received for Record, August 15th, A.D. 1959 at 11:01 A.M.

Town Clerk's Office<br>
Little Compton, Rhode Island<br>
June 14th, 1972

I, Philip B. Wilbur, Town Clerk of the Town of Little Compton, Rhode Island, do hereby certify that the foregoing instrument is a true copy of the original as recorded with the Land Evidence Records of said Town of Little Compton in Book No. 37 at Page 537.

Attest:<br>
(signed)    Philip B. Wilbur

## *Appendix C*

KNOW ALL MEN BY THESE PRESENTS, THAT we, PHILIP B. WILBUR and PHILIP W. ALMY, JR., both residing in the Town of Little Compton, County of Newport and State of Rhode Island, Trustees under a written Declaration of Trust dated August 4, 1958, made by Manuel De Silveira, recorded with the Records of Land Evidence in said Little Compton in Book 37 at page 141, by the power conferred by said Indenture of Trust and by every other power us thereunto enabling, and I, MARY S. THOMAS, married, of said Little Compton, for TEN (10) DOLLARS and other valuable consideration to us paid, grant to JOHNS H. CONGDON II and ADELINE C. CONGDON, his wife, of the City of Providence and State of Rhode Island as Joint Tenants, a certain estate situated in Little Compton in the County of Newport and State of Rhode Island, and the buildings and improvements thereon erected, with the exception specified below, bounded and described as follows:

[a]     Those three parcels of land situated on Grange Avenue in the Town of Little Compton and State of Rhode Island, laid out and delineated as Parcels B, E and G on that plan entitled, "Plan of Land Surveyed for Johns H. Congdon II Located in Little Compton, R.I. Leo W. Grenier, 49 Purchase St., Fall River, Mass. Scale 1" = 30', July 1, 1960 Revised July 18, 1961, Revised August 24, 1961, Total Area = 8.725 Acres ± ", which plan is to be recorded with the Records of Land Evidence in said Little Compton contemporaneously herewith.

Said Parcel B is almost entirely surrounded by stone walls and is bounded westerly by Grange Avenue five hundred thirty seven and 15/100 (537.15) feet, northerly by land now or lately of John D. and Margaret Mary Reynolds two hundred seventy one and 54/100 (271.54) feet, easterly by land now or lately of Manuel DeSilveira in part and in part by said Parcel E six hundred twelve and 23/100 (612.23) feet, southerly by a twenty (20) foot right of way two hundred forty five and 02/100 (245.02) feet, and southwesterly by Grange Avenue by five lines measured respectively fifty three (53) feet, twenty one and 48/100 (21.48) feet, twenty and 62/100 (20.62) feet, twenty three and 50/100 (23.50) feet and twelve and 26/100 (12.26) feet, all as delineated on said plan.

Said Parcel E is likewise almost entirely surrounded by stone walls and is bounded westerly by said Parcel B two hundred forty nine and 81/100 (249.81) feet, northerly by said land now or lately of Manuel DeSilveira three hundred twenty three and 25/100 (323.25) feet, easterly by land now or lately of James H. Shaw three hundred five and 06/100 (305.06) feet, southerly by said Parcel G

by two lines measuring respectively two hundred four and 65/100 (204.65) feet and one hundred twenty five and 62/100 (125.62) feet and westerly and southerly by a twenty (20) foot right of way.

[b]    The grantors reserve for the benefit of said adjoining land now or lately of Manuel DeSilveira and for the benefit of those entitled thereto for access to the cemetery hereinafter referred to the easement of a right of way on foot and with vehicles over the westerly twenty (20) feet of said Parcel E and extending from the twenty (20) foot right of way hereinbefore referred to northerly to said land now or lately of Manuel DeSilveira.

[c]    For the purpose of freeing said Parcel E and said Parcels B and G from the burden of any other right of way to and from the cemetery lying on the northerly portion of said Parcel E, the grantors do hereby dedicate, as a private right of way for all purposes of going to and from said cemetery the twenty (20) foot right of way to Cemetery lying next northerly of said Parcel E as delineated on said plan together with the right to use for such purposes the said wester ly twenty (20) feet of said Parcel E and the twenty (20) foot right of way extending from Grange Avenue to said Parcel E.

The right, title and interest of others in and to said cemetery is hereby excepted from this deed.

[d]    Said Parcel G is bounded northerly by said Parcel E by two lines measuring respectively one hundred twenty five and 62/100 (125.62) feet and two hundred four and 65/100 (204.65) feet, easterly by land now or lately of James H. Shaw three hundred forty seven and 73/100 (347.73) feet, southerly by land now or lately of Manuel DeSilveira two hundred twenty nine and 81/100 (229.81) feet, westerly by land now or lately of James F. Ross and wife one hundred thirty seven and 49/100 (137.49) feet, southerly by a twenty (20) foot right of way one hundred fifty five and 83/100 (155.83) feet and westerly by a twenty (20) foot right of way two hundred twenty five and 48/100 (225.48) feet.

Said parcel B contains 4.124 acres. Said Parcel E contains 2.378 acres exclusive of said Cemetery and said Parcel G contains 2.223 acres, be the same all more or less.

TOGETHER with the right to pass and repass by foot or with vehicles, in common with the grantors and others who may be or may have been granted similar rights and privileges over a twenty (20) foot right of way running from Grange Avenue along the southerly side of said Parcel B and along the westerly side of said Parcels E and G and along a portion of the northerly line of said Ross land, as delineated on said plan.

The grantors having constructed on said right of way a twelve (12) foot wide travelled surface of gravel, it is hereby understood and agreed that there shall be no obligation upon the said grantors to maintain or repair said right of way.

Together also with the fee in and to the one-half of said right of way, above referred to, lying nearest to the property herein conveyed to the grantees, subject, however, to said rights of others to pass and repass over said right of way.

[e] Reserving unto the grantors, their heirs and assigns, in common with the grantees, their heirs and assigns, a right of way to pass and repass on foot or with vehicles over a twenty (20) foot right of way lying in Lot G next easterly of said Ross premises as delineated on the plan of said Congdon premises above referred to.

I, ANTONE S. THOMAS, husband of said Mary S. Thomas, hereby release all my right of curtesy and homestead in and to the said granted premises unto the said grantees and their heirs and assigns.

WITNESS our hands and seals this 1st day of September 1961.

Signed and Sealed in presence of:

| | | |
|---|---|---|
| John W. Steere<br>as to PWA, Jr. & PBW | Philip W. Almy, Jr.<br>Trustee as aforesaid | (Seal) |
| $17.60 in Documentary<br>Stamps affixed. | Philip B. Wilbur<br>Trustee as aforesaid | (Seal) |
| Lois W. Sylvia<br>as to M.S.T. & A.S.T. | Mary S. Thomas | (Seal) |
| | Antone S. Thomas | (Seal) |

STATE OF RHODE ISLAND
COUNTY OF NEWPORT

In Little Compton on the 1st day of September, A.D. 1961, before me personally appeared the above named PHILIP B. WILBUR and PHILIP W. ALMY, JR., Trustees as aforesaid, to me known and known by me to be the parties executing the foregoing instrument and they acknowledged said instrument by them executed, to be their free act and deed.

John W. Steere
Notary Public

STATE OF RHODE ISLAND
COUNTY OF NEWPORT

In Little Compton on the 1st day of September A.D. 1961, before me personally appeared the above named Mary S. Thomas and Antone S. Thomas, her husband, to me known and known by me to be the parties executing the foregoing instrument, and they acknowledged said instrument by them executed, to be their free act and deed.

Lois W. Sylvia
Notary Public

Received for Record, September 5th, A.D. 1961 at 11:01 A.M.

Town Clerk's Office
Little Compton, Rhode Island
June 14th, 1972

I, Philip B. Wilbur, Town Clerk of the Town of Little Compton, Rhode Island, do hereby certify that the foregoing instrument is a true copy of the original as recorded with the Land Evidence Records of said Town of Little Compton in Book No. 39 at Page 139.

Attest:
(signed)   Philip B. Wilbur
Town Clerk.