June 6, 2017

Dorrance H. Hamilton et al.            :

v.            :

Carol C. Ballard et al.            :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2014-323-Appeal.
(NC 00-340)
(Concurrence and Dissent
 begins on page 17)

Dorrance H. Hamilton et al.            :

                    v.                            :

Carol C. Ballard et al.            :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**

"Jarndyce and Jarndyce drones on.  This scarecrow of a suit has, in course of time, become so complicated, that no man alive knows what it means.  The parties to it understand it least; but it has been observed that no two Chancery lawyers can talk about it for five minutes, without coming to a total disagreement as to all the premises.  Innumerable children have been born into the cause; innumerable young people have married into it; innumerable old people have died out of it.  Scores of persons have deliriously found themselves made parties in Jarndyce and Jarndyce, without knowing how or why; whole families have inherited legendary hatreds with the suit.  The little plaintiff or defendant, who was promised a new rocking-horse when Jarndyce and Jarndyce should be settled, has grown up, possessed himself of a real horse, and trotted away into the other world. * * * Jarndyce and Jarndyce still drags its dreary length before the Court, perennially hopeless."[1]

This case arises from a briar patch of litigation between feuding neighbors who are unable to agree about many things, including, particular to this case, the details of an easement that resulted from a court-mandated land partition.  The underlying legal battle began in August

---

[1] Charles Dickens, <u>Bleak House</u> 3 (Bradbury & Evans) (1853).

2000. By May 2005, Carol and A. L. Ballard had filed an answer to SVF Foundation's[2] fifth amended complaint. Within that pleading, the Ballards counterclaimed, alleging that, among other things, SVF Foundation was interfering with the Ballards' easement that ran across SVF's property.[3] SVF moved for summary judgment on that count, and the Superior Court granted SVF's motion. The Ballards timely appealed to this Court, challenging the Superior Court's decision granting summary judgment to SVF.

This matter came before the Supreme Court for oral argument on January 25, 2017. After carefully reviewing the record, and after considering the parties' written and oral arguments, we vacate the Superior Court's judgment.[4]

## I

### Facts and Travel

### A

The Ballards and Hamilton were once cordial acquaintances who teamed up to save Newport's historic Edgehill property from development. Together, they purchased the property at auction, taking title as tenants in common. Shortly thereafter, the parties' relationship began to sour and eventually became acrimonious. Ultimately, the Edgehill property was divided pursuant to a court-ordered partition.

At the time the Ballards and Hamilton purchased the Edgehill property, it consisted of two distinct areas. The western portion of the estate contained "a fascinating masonry complex

---

[2] SVF Foundation is the successor in interest to the Dorrance H. Hamilton Trust, of which Dorrance H. Hamilton was a trustee.

[3] Because of the many complaints and counterclaims in this case, it is confusing to refer to the parties as plaintiff and defendant, as each party is, at times, postured as both plaintiff and defendant. For clarity, we will refer to the parties by name.

[4] Final judgment ordering the partition entered in December 2002. This litigation has been grinding on for the better part of two decades.

known as the 'Swiss Village[.]'" Meanwhile, located on the eastern part of the Edgehill property were the Manor House and the Carriage House. The Manor House is a striking building designed by the famous American architects McKim, Mead & White. It sits on grounds designed by the equally prominent Frederick Law Olmsted. The Carriage House was built concurrently with the Manor House and is located nearby "in a swale between the Manor House and * * * the 'Swiss Village[.]'"

The partition left Hamilton, SVF's predecessor, with the Swiss Village portion of the estate, and the Ballards with the Manor House and Carriage House section (the "Manor House Property"). Carol and A. L. Ballard each took an undivided 50 percent interest in the property they received from the partition. In addition to her undivided 50 percent interest in the Manor House Property, Carol Ballard owned, in her own name, an undeveloped tract of land known as "Lot 20" that abutted the western edge of the Swiss Village property. Carol Ballard purchased Lot No. 20 in 1995, before the Ballards had acquired any ownership interest in the Edgehill property. After the partition went into effect, there were three tracts of land relevant to this case. To the west lay Carol Ballard's solely owned Lot No. 20. To the east was the Manor House Property, of which Carol and A. L. Ballard each owned an undivided 50 percent interest. And lying directly between Lot No. 20 and the Manor House Property, and abutting both properties, was the Swiss Village land, owned by the Dorrance H. Hamilton Trust.

As a result of the partition, the Ballards were left without any interior access between the Manor House Property and Lot No. 20. Accordingly, they sought an easement to connect their two properties so that they could transport mowing equipment from the Manor House Property to Lot No. 20 without having to use public roads, ostensibly for safety reasons. In his supplemental report and recommendation, the court-appointed commissioner assigned to oversee the partition

- 3 -

recommended that the Ballards be granted their requested easement. The Superior Court, in its order mandating the partition, awarded the Ballards "an easement providing access to Lot 20 as recommended in the Commissioner's Supplemental Report * * *, subject to the restrictions and stipulations noted in the Supplemental Report."

The "restrictions and stipulations" to which the judgment refers are:

> "[T]he Commissioner recommends granting an easement for access in favor of the owners of the Carriage House and Manor House. The easement should be considered personal to such owners, be it the Ballards or their successors, for so long as the owners of the Carriage House parcel and/or the Manor House parcel also retain an ownership interest in lot #20."

After granting the easement,[5] the Superior Court commissioned Waterman Engineering Co. to file a final class 1 survey of the partitioned land. That survey clearly indicated the easement's location traversing across the Swiss Village property. The survey also specified that the easement was to be fifteen feet wide.[6]

**B**

At the time the Superior Court granted the Ballards their easement, there was no road or path that connected the Manor House Property to Lot No. 20. Thus, the Ballards and SVF had to build a road. It should be a surprise to no one that the parties were unable to agree on the details of how to build the byway that would cross the easement or the width of the gates that were to be

---

[5] There were multiple easements granted as part of the court-ordered partition. This appeal involves only the interior access easement that connects the Manor House Property to Lot No. 20. Any reference to an easement within this opinion refers to the interior access easement only.

[6] The December 2002 order, which mandated the partition, adopted "the findings and recommendations of the Court-Appointed Commissioner" that, among other things, created the Ballards' access easement. That order went on to say that "[t]he parties may, at any time, commission Waterman Engineering to perform a survey to confirm the metes and bounds descriptions * * *." Needless to say, the parties did require Waterman Engineering's services; and, at the direction of the court, the class 1 survey was completed on July 23, 2004.

- 4 -

placed at each end of the easement. This disagreement led to a litany of tit-for-tat litigation[7] too lengthy to recount in full. Relevant to this appeal, however, are a motion for relief from judgment that the Ballards filed in February 2005 pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure, in which the Ballards sought to have the location of the easement moved, and count 7 of the Ballards' counterclaim, filed in May 2005, which alleged that SVF interfered with the Ballards' easement.

Litigation surrounding the easement encompassed multiple hearings, as well as two judicial views of the property on which the easement sat. In August 2005, a Superior Court justice ordered SVF, the owner of the servient estate, to construct "a farm-type road as described by the [c]ourt during the colloquy at [the June 27, 2005] hearing" to accomodate the Ballards' easement. At that hearing, the Superior Court justice described the requirements of the farm road to be constructed as follows:

> "a road that on either side of a middle rise on which there is often flowers and weeds, on either side there are tracks that are wide enough not merely for motor vehicles but for those wide tires or double tires that one sees on farm vehicles and farm wagons and other equipment used in farming and cultivation. * * * [I]t would be graded in such fashion that it would be safe for the operation of a tractor or similar vehicle over the road, and it would be graded in the middle of that farm road so that the suspension or undercarriage of the farm vehicles would not touch it as they passed over it."

Despite the hearing justice's fairly detailed description of the "farm road" SVF was to build, the parties were never able to agree on the exact specifications of either the road or the gates that were to be placed at either end of the easement. Nevertheless, SVF went ahead and constructed a dirt road during the spring of 2006. Notwithstanding the fact that the recorded

---

[7] At an August 2006 hearing, a Superior Court justice remarked, during a colloquy with the attorneys, "I confess, I vacillate back and forth to figure out which one of your clients is the more obstinate or the more unreasonable."

easement was fifteen feet wide, the path, as constructed, narrowed to approximately twelve feet at times. Also, SVF installed gates that were ten feet wide at either end of the fifteen-foot-wide easement. Needless to say, the Ballards were dissatisfied with both the road and the gates. The Ballards insisted that, although the lawnmower that they owned at the time, which was approximately six feet wide, could travel safely on the farm road, they were planning on purchasing a new mower that would be fourteen feet three inches wide. As a result, in August 2006, two more days of hearings ensued.

At a January 2007 hearing, which appears to have been held in response to SVF's motion to eliminate the easement, the hearing justice, after he took a second view of the property, attempted to put an end to the dispute over the road, saying:

> "There is no way that this [c]ourt in the person of yours truly or in any other judge can constantly supervise the prolonged and protracted bickering between these parties who, apparently, have no limits to the resources they can spend on capable counsel to prolong this contest, but the [c]ourt, really, has got to bring some finality to this * * *.
> "The Ballards wanted an easement, they got an easement. It may not be following the exact course that they would have liked and it also would not afford them a wheel base of 13 feet, but under law of easements it does provide them with the use that the easement was ordained; namely, to get farm vehicles, including tractors, from one section of the Ballard property to another."

After the hearing, an order entered that said, in relevant part, that SVF had "constructed a farm road providing reasonable access to the [Ballards]" that "satisfied [the Superior] Court's previous orders." The order added that, "[b]ased on the evidence presented at the hearing, and the [c]ourt's views of the subject property, the [c]ourt finds that the 10 foot gates do not impinge on the Ballards' reasonable use of the access easement * * *."

Despite the January 2007 order, final judgment did not enter on any of the counts contained within SVF's fifth amended complaint or the Ballards' counterclaim thereto. The case

languished, more or less, until June 2014, when SVF moved for summary judgment on count 7 of the Ballards' counterclaim, which alleged that SVF was interfering with their easement.[8] Ultimately, a different Superior Court justice granted summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure in favor of SVF, and then entered final judgment under Rule 54(b) of the Superior Court Rules of Civil Procedure on count 7 only.[9] The Ballards timely appealed that judgment to this Court.

## C

In 2012, before final judgment entered, A. L. Ballard conveyed 90 percent of his undivided 50 percent interest in the Manor House Property to Ballard Properties, LP. Thus, when final judgment entered in 2014, the ownership interests in the Manor House Property were as follows: Ballard Properties, LP had a 45 percent undivided interest; A. L. Ballard retained a 5 percent undivided interest; and Carol Ballard owned a 50 percent undivided interest. Also at the time of final judgment, Carol Ballard maintained the entire ownership interest in Lot No. 20.

However, after the Ballards filed their notice of appeal, both the Manor House Property and Lot No. 20 changed ownership. In August 2015, Carol Ballard "conveyed her undivided 50 percent interest in [the Manor House Property] to [her] daughter * * *." Then, in March 2016, Carol Ballard transferred, by quitclaim deed, her entire interest in Lot No. 20 to Ballard

---

[8] Count 7 of the Ballards' counterclaim, in large part, sought injunctive relief to bar SVF from interfering with the easement. It was filed before SVF constructed the farm road in the spring of 2006.

[9] The justice who granted summary judgment is not the same justice who presided over the case when the January 2007 order entered. Not surprisingly, that justice retired years before final judgment entered in 2014. Moreover, the justice who presided over the case in 2007 was not the same justice who presided over the case when the partition was ordered in 2002. That justice had also retired.

Properties, LP.[10]  Importantly, as a result of Carol Ballard's two property transfers, during the eight-month period between August 2015 and March 2016, the Manor House Property and Lot No. 20 did not share a common owner.[11]

## II

## Discussion

## A

## Issues on Appeal

On appeal, the Ballards argue that the hearing justice erred when he granted summary judgment because material issues of fact remained in dispute.  Subsumed within that broad attack on summary judgment, the Ballards contend that the hearing justice inappropriately applied the law-of-the-case doctrine, thereby "relying on purported 'findings' for which there was no evidentiary basis" when he granted SVF's motion for summary judgment.

In addition to countering the Ballards' arguments on appeal, SVF argues to this Court that the matter has been rendered moot during the pendency of this appeal because Carol Ballard

---

[10] The Ballards attempted to supplement the record with an affidavit that attested to the date that Carol Ballard conveyed Lot No. 20 to Ballard Properties, LP.  This Court, however, denied the Ballards' motion to supplement the record, and that affidavit is not part of this case's record. Nevertheless, this Court may take judicial notice of public records, including deeds.  See Rule 201(c), (b)(2) of the Rhode Island Rules of Evidence ("A court may take judicial notice, whether requested or not. * * * A judicially noticed fact must be one not subject to reasonable dispute * * * [and] capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").  Accordingly, we take judicial notice of the quitclaim deed dated March 30, 2016, recorded in the City of Newport land evidence records that indicates that Carol Ballard granted to Ballard Properties, LP "all [her] right, title and interest" in Lot No. 20.

[11] Between August 2015 and March 2016 ownership interests in the Manor House Property were as follows: Ballard Properties, LP had a 45 percent undivided interest; A. L. Ballard retained a 5 percent undivided interest; and the Ballards' daughter, Leslie Ballard Hull, owned a 50 percent undivided interest.  During this same time period, Carol Ballard retained a 100 percent ownership interest in Lot No. 20.

conveyed her interest in the Manor House Property to Leslie Ballard Hull.  Thus, SVF argues, the easement has been extinguished by its own terms.

**B**

**Standard of Review**

"We review a hearing justice's grant of summary judgment <u>de novo</u>." <u>Tri-Town Construction Co. v. Commerce Park Associates 12, LLC</u>, 139 A.3d 467, 474 (R.I. 2016) (citing <u>Sullo v. Greenberg</u>, 68 A.3d 404, 406 (R.I. 2013)).  "Summary judgment is an extreme remedy and should be granted only when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law.'" <u>Plunkett v. State</u>, 869 A.2d 1185, 1187 (R.I. 2005) (quoting <u>Wright v. Zielinski</u>, 824 A.2d 494, 497 (R.I. 2003)).  "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." <u>National Refrigeration, Inc. v. Standen Contracting Co.</u>, 942 A.2d 968, 971 (R.I. 2008) (quoting <u>Carlson v. Town of Smithfield</u>, 723 A.2d 1129, 1131 (R.I. 1999)).  The party opposing "a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." <u>Id.</u> (quoting <u>Accent Store Design, Inc. v. Marathon House, Inc.</u>, 674 A.2d 1223, 1225 (R.I. 1996)).

## C

## Law-of-the-Case

### i

In June 2014, SVF filed a motion for summary judgment on count 7 of the Ballards' counterclaim, which alleged that SVF was interfering with the Ballards' easement. Within the memorandum that accompanied that motion, SVF argued that summary judgment should be granted because, according to SVF, the January 2007 order had already "decided the issues related to the access easement." Accordingly, SVF believed that the law-of-the-case doctrine should apply. That doctrine "states that ordinarily after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a subsequent phase of the suit with the same question in the identical manner, should refrain from disturbing the first ruling." State v. Infantolino, 116 R.I. 303, 310, 355 A.2d 722, 726 (1976) (citing Rhode Island Ophthalmological Society v. Cannon, 113 R.I. 16, 20, 317 A.2d 124, 126-27 (1974)).

In October 2014, a hearing was conducted on SVF's motion. At that proceeding, after accepting SVF's argument that law-of-the-case should apply with respect to the January 2007 order, the hearing justice asked the Ballards' attorney if he was "saying anything to me today that you didn't say to [the hearing justice in 2007]; yes or no?" The Ballards' attorney replied, "I would say no." Despite acknowledging that "[i]t doesn't take a genius to know that if the space is ten feet, a 15-foot mower is not going to fit[,]" the hearing justice applied the January 2007 order to the motion before him. Three days after the hearing, an order entered granting SVF's motion for summary judgment. That order tersely said, "[t]he previous rulings of [the hearing justice in 2007] with respect to the access easement may stand and, accordingly, summary

judgment is granted as to the Ballards' [c]ount [7] * * *." Final judgment entered shortly thereafter.

**ii**

The Ballards argue that the law-of-the-case doctrine is inapplicable in this situation because, not only had the circumstances changed since the January 2007 order, but also that the order "was based on factual errors and was manifestly erroneous in law." Specifically, the Ballards argue that the January 2007 order was "an interlocutory ruling that was expressly based on * * * 'findings' derived from a view." The Ballards assert that those findings were erroneous because "a view is not evidence." Additionally, the Ballards claim that the fact that they now own a different mower than they did in 2007 constitutes a change in circumstances that should make the law-of-the-case doctrine inapplicable.

The Ballards go on to argue that, in 2014, the hearing justice was not addressing the "'same question[]' raised in an 'identical manner,'" as the hearing justice in 2007. Moreover, the Ballards contend that, because the hearing justice, in relying on the law-of-the-case doctrine, foreclosed new arguments, they were not "able to make an evidentiary record that what SVF ha[d] done constitute[d] a nuisance because it [was] interference with [their] 15-foot easement * * *." Without that evidentiary record, the Ballards maintain, their effort to show that there was a material issue of fact in dispute was precluded.

SVF maintains that the hearing justice correctly applied the law-of-the-case doctrine because, according to SVF, the issues before the Superior Court in 2014 had been decided in 2007, including "issues related to the location, nature, and size of the Access Easement" at the time of its summary-judgment motion. It is our conclusion, however, that SVF confuses those issues, which were tied to the Ballards' Rule 60(b) motion, with issues stemming from the

ongoing litigation surrounding SVF's fifth amended complaint and the Ballards' related counterclaims to that complaint.[12]  Importantly, count 7 of the Ballards' counterclaim, which alleges unreasonable interference with their easement and seeks, in large part, injunctive relief that would bar SVF from impeding the Ballards' use of the easement, is distinct from their Rule 60(b) motion, which sought to relocate the easement.

SVF argues that the January 2007 order—which found, among other things, that the ten-foot-wide gates did not impinge on the Ballards' easement—was akin to final judgment, claiming that the hearing justice "ended the dispute" when he entered that order.  Accordingly, SVF attempts to argue that, not only should the law-of-the-case doctrine control the hearing justice's 2014 decision, but also that the Ballards' request for review by this Court is untimely because they should have appealed directly from the January 2007 order.

But, in fact, the Ballards did seek review of that order.  Shortly after the order entered, the Ballards petitioned this Court for a writ of certiorari.  SVF, in its opposition to the issuance of that writ, argued that granting a writ of certiorari at that time was inappropriate because the Ballards were appealing from an interlocutory order.[13]  It is, at the very least, contradictory, if not worthy of estoppel by judicial admission, for SVF to now contend that the January 2007 order was analogous to final judgment when it energetically argued that the same order was interlocutory in 2007.  It is our opinion that the January 2007 order was interlocutory in nature.

---

[12] The Ballards filed their motion pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure in February 2005.  SVF filed its fifth amended complaint in April 2005, followed by the Ballards' answer and counterclaim, filed in May 2005.  Pending before the court when it issued the January 2007 order was a motion to compel filed by the Ballards and a motion to eliminate the easement filed by SVF.

[13] This Court did not grant the writ of certiorari.

**iii**

We acknowledge that the law-of-the-case doctrine is well established in this jurisdiction. See Goodman v. Turner, 512 A.2d 861, 864 (R.I. 1986). We have said that it "generally ought to be adhered to for the principal reason that it is designed to promote the stability of decisions of judges of the same court and to avoid unseemly contests and differences that otherwise might arise among them to the detriment of public confidence in the judicial function." Id. (quoting Payne v. Superior Court for Providence County, 78 R.I. 177, 184-85, 80 A.2d 159, 163 (1951)).

At the same time, the "law-of-the-case doctrine does not have the finality of res judicata * * *." Richardson v. Smith, 691 A.2d 543, 546 (R.I. 1997). Although we have not explicitly said so previously, we believe, and our case law indicates, that when we have held that law-of-the-case applies if the same question is presented in an "identical manner," that does not mean that it is appropriate to apply law-of-the-case from an interlocutory ruling to a dispositive motion. See, e.g., Goodman, 512 A.2d at 864 (holding that law-of-the-case applies from a summary judgment motion to a motion to dismiss); Rhode Island Hospital Trust National Bank v. National Health Foundation, 119 R.I. 823, 829, 384 A.2d 301, 305 (1978) (law-of-the-case "may bar consideration of successive motions for summary judgments"); Infantolino, 116 R.I. at 311, 355 A.2d at 726 (holding that law-of-the-case applies to successive motions to suppress).

**iv**

It is our opinion that the trial justice erred when he employed the law-of-the-case doctrine in his ruling on SVF's motion for summary judgment. Law-of-the-case is merited when "the same question" is presented "in the identical manner." Infantolino, 116 R.I. at 310, 355 A.2d at 726. Here, it cannot be said that the issues in the January 2007 order and the 2014 summary-judgment decision presented the same question. Furthermore, assuming without deciding that

the same question was raised, it certainly was not presented in the identical manner at both hearings. The January 2007 order was interlocutory in nature, while the summary-judgment decision was dispositive. Moreover, the enormous passage of time between the January 2007 order and the summary-judgment proceedings in 2014 cannot escape our notice. Given the different manners in which the question was presented in the 2007 and 2014 hearings, it was, in our view, incorrect to apply law-of-the-case in 2014. Therefore, the hearing justice erred when he granted summary judgment.[14]

## D

### Has the Easement Been Extinguished?

We turn now to SVF's argument that the easement has been extinguished subsequent to the Superior Court's entry of final judgment, thus rendering this matter moot. Although mootness was not raised before the Superior Court, we consider mootness to be a threshold issue of justiciability and not subject to the strictures of our raise-or-waive doctrine. See Boyer v. Bedrosian, 57 A.3d 259, 271-72 (R.I. 2012). This Court has "consistently held that a case is moot if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant[s] of a continuing stake in the controversy." Bucci v. Lehman Brothers Bank, FSB, 68 A.3d 1069, 1079 (R.I. 2013) (quoting Boyer, 57 A.3d at 272).

SVF contends that the easement contains an express limitation that requires the easement to terminate on its own terms upon the occurrence of a condition subsequent; namely, if the owners of the Manor House Property fail to also retain an ownership interest in Lot No. 20. This, it argues, occurred in August 2015. According to SVF, at the moment when Carol Ballard

---

[14] In so holding, we do not mean to say that, if appropriate, the law-of-the-case doctrine may not be applied at trial.

conveyed her 50 percent undivided interest in the Manor House Property to Leslie Ballard Hull the easement expired on its own terms.[15]

The Ballards, meanwhile, argue that the easement has not been extinguished because, despite Carol Ballard's conveyance of her interest in the Manor House Property in August 2015, the intent expressed in the document that created the easement was, at all times, met.[16]  In essence, the Ballards assert that, because Carol Ballard, for estate-planning purposes, transferred her interest in the Manor House Property to her daughter, the property nonetheless remained in the family.  Therefore, even if the Manor House Property and Lot No. 20 did not retain common owners from a legal perspective, common ownership was, nonetheless, maintained as a functional matter.  The Ballards contend that the easement could be extinguished only if the Manor House Property and Lot No. 20 "were ever to become permanently alienated through conveyance of one or another to an unrelated third party[.]"

It is well settled that an easement may terminate by expiration.  See Jackvony v. Poncelet, 584 A.2d 1112, 1114 (R.I. 1991); see also James H. Backman & David A. Thomas, A Practical Guide to Disputes Between Adjoining Landowners—Easements §1.05[2] at 1-42 (2016) ("easements exist that are subject to termination on a specified condition subsequent or another defeasible event, as is the case with regard to estates generally").  "No notice of termination is necessary" to extinguish an easement "when the [easement] by its very terms provides therefore."  Moulson v. Iannuccilli, 84 R.I. 85, 90, 121 A.2d 662, 664 (1956) (citing Akasu v.

---

[15] The exact language from the Commissioner's Report that SVF contends created an express limitation on the easement says, "[t]he easement should be considered personal to such owners, be it the Ballards or their successors, for so long as the owners of the Carriage House parcel and/or Manor House parcel also retain an ownership interest in lot #20."

[16] We pause to note that neither party disputes that Carol Ballard conveyed her interest in the Manor House Property to Leslie Ballard Hull in August 2015, or that she conveyed her interest in Lot No. 20 to Ballard Properties, LP in March 2016.

<u>Power</u>, 91 N.E.2d 224, 226 (Mass. 1950) ("An easement may be granted which will terminate upon the happening of some particular act or upon the non-performance of a condition subsequent.")). Moreover, "[t]he result of a finding that an easement has been terminated is that the complete control of the land will ordinarily return to the owner of the underlying fee or servient tenement." David A. Thomas, 7 <u>Thompson on Real Property</u> §60.08(d) at 576 (2d ed. 2006).

This Court has

> "long adhered to the following basic principle: '[W]here in a written instrument an easement of way is granted in express terms, the nature and extent of the easement thus established is to be determined primarily from the language used in the writing, and if the terms thereof are free from uncertainty and ambiguity, oral testimony is not admissible to explain the nature or extent of the easement grant.'" <u>Grady v. Narragansett Electric Co.</u>, 962 A.2d 34, 45 (R.I. 2009) (quoting <u>Waterman v. Waterman</u>, 93 R.I. 344, 349, 175 A.2d 291, 294 (1961)).

Moreover, "[i]n construing the reservation * * * we seek only that intention expressed in the instrument and not some undisclosed intention that the parties may have had in mind." <u>Thomas v. Ross</u>, 119 R.I. 231, 240, 376 A.2d 1368, 1373 (1977).

SVF argues that, if the easement has been extinguished, then this appeal is moot. Indeed, the Ballards seem to concede this point in their brief to this Court. After citing several cases, the Ballards urge that "[m]ootness [arises] in each case because * * * the subject of the litigation had unquestionably ceased to exist."[17] This, they maintain, is not what occurred here. We agree with the parties that, if the easement has been extinguished, then this case has become moot. However, given the undeveloped state of the record on this issue, we believe it to be unwise to

---

[17] The Ballards cite the following cases: <u>Campbell v. Tiverton Zoning Board</u>, 15 A.3d 1015 (R.I. 2011); <u>State v. Medical Malpractice Joint Underwriting Association</u>, 941 A.2d 219 (R.I. 2008); <u>Cicilline v. Almond</u>, 809 A.2d 1101 (R.I. 2002); <u>Associated Builders & Contractors of Rhode Island, Inc. v. City of Providence</u>, 754 A.2d 89 (R.I. 2000).

determine whether the easement has, in fact, been extinguished without further proceedings in the trial court.

## III

### Conclusion

For the reasons set forth in this opinion, we vacate the Superior Court's judgment. We remand the record to that tribunal.

**Justice Goldberg, concurring and dissenting.** I concur in the decision of the majority in this case, but for different reasons. I am of the opinion that, in the context of this case, summary judgment, based on the law of the case doctrine, arising from an unappealed order in a proceeding, pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure, is reversible error. It is my opinion that the January 2007 order became a final order when counsel neglected to file a timely notice of appeal.[1] Furthermore, and most significantly, I deem the majority's characterization of the January 2007 order as "interlocutory in nature" to be indefinite and unclear and will lead to confusion in the Superior Court when this case is remanded. I am compelled to respectfully dissent.

At least three justices of the Superior Court and a commissioner have devoted considerable time, effort, and judicial resources in connection with what can only be described as an unseemly squabble with intractable litigants and their feuding lawyers. Because we are remanding a single count—count 7 of the Ballards' counterclaim, filed in response to Hamilton's (now SVF's) <u>fifth</u> amended complaint—in a case that was filed seventeen years ago, to yet

---

[1] As will be discussed herein, the fact that the Ballards sought review by petition for writ of certiorari is irrelevant; because the order was appealable, certiorari did not lie.

another justice of the Superior Court, it is my belief that the Supreme Court must clearly articulate what is being remanded to the Superior Court and, more significantly, the issues that are not before the trial court on remand.  A careful examination of the voluminous record in this saga and the twists and permutations taken over this difficult terrain leads me to this conclusion.

Since the inception of this case in 2000, at least three judgments entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, before the entry of final judgment—which is not before us—and three or four additional complaints have been filed in Superior Court.[2]  Not a single case has gone to trial; but Rule 54(b) judgments abound and continue to multiply.

The partition order in this case was entered in 2001, but the Rule 54(b) judgment did not enter until 2002.  The first skirmishes in the Battle of Swiss Village soon commenced— culminating in another order that confirmed the original metes and bounds description of the easement and its filing in the land evidence records.  Another series of clashes developed, including claims of trespass, the clear-cutting of hundreds of trees by the Ballards, squabbles over the survey lines, and attorneys' fees.  Another Rule 54(b) judgment, denying Hamilton's request for attorneys' fees as untimely, was affirmed by this Court in Moore v. Ballard, 914 A.2d

---

[2]  The remaining claims and counterclaims in this fifth amended partition action—minus the bevy of judgments pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure—and two additional cases, filed after the partition action, were terminated on July 27, 2015—on the eve of trial—and some claims are pending in this Court in a consolidated appeal. SVF also has notified the Court that the Ballards have filed yet another case, Ballard v. SVF Foundation, NC-2013-499, complaining about the gates and the easement that is the subject of this case.  There also is lurking in the background the ominous question of whether the easement that is the subject of this controversy was assigned to eternity when the Ballards, as owners of the Manor House property, transferred their interest to a family member.

Thus, the classification of the January 2007 order as "interlocutory in nature" will give rise to another mountain of controversy, which will ultimately wind its way back to this Court, but not before a fourth or fifth member of the trial bench enters the fray.

487 (R.I. 2007). While the original complaint was pending, hostilities over the access easement, sewer lines, terrain, and gates persisted.[3]

In light of the majority's reference to the Jarndyce-like nature of this sojourn, it is my firm belief that this Court should not, in any way, contribute to its perpetual existence. Classifying an order issued in accordance with a Rule 60(b) motion for relief from judgment as "interlocutory in nature" will lead to unnecessary confusion, obfuscation, and delay; it is the wrong path to travel and raises the question, interlocutory to what claim?

It is quite clear to me that the order, which the majority has classified as "interlocutory in nature," was entered as a <u>final</u> <u>order</u> at the conclusion of a Rule 60(b) proceeding, which was instituted by the Ballards, in February 2005, who implored the trial justice to grant relief from the original, unappealed, Rule 54(b) partition judgment.[4] The <u>only</u> matter that was heard by this Superior Court justice was the Ballards' Rule 60(b) motion for relief from judgment, in which the Ballards sought to have the easement relocated and, failing that, agreed to the construction of a farm road. The intrepid trial justice took up the motion—that specifically invoked the "general equitable powers" of the Superior Court—in order to give the Ballards relief from that judgment. The Ballards placed the question of the appropriate use of the easement, whether it should be relocated or modified "because * * * the location is impracticable" due to the "<u>terrain and vegetation</u>," squarely before the Superior Court, and the Ballards obtained relief—a farm road,

---

[3] In its brief in this Court, SVF has contended that "[i]n the summer of 2004, the Ballards trespassed onto [SVF's] property * * * and clear cut a large swath of forested area." This resulted in an injunction.

[4] In their twenty-four-page memorandum in support of their motion for relief from judgment, the Ballards state: "This Court clearly has the authority under Rule 60(b) [of the Superior Court Rules of Civil Procedure], as well as under its general equitable powers, to order this relief." The Court did so when it ordered SVF to construct the roadway on the easement and again on January 30, 2007, when it denied any further relief and concluded the proceeding under Rule 60(b).

allowing for reasonable use, was constructed by SVF. (Emphasis added.) The bickering continued nonetheless when the Ballards declared that they wanted to utilize the easement for an industrial sized tractor they had not yet acquired. It was represented to the Superior Court that the tractor that the Ballards currently owned fit through the gates.

The Superior Court justice patiently devoted significant energy and judicial resources in an earnest effort to accommodate the parties and to reach a truce in the neighborhood. He conducted at least six hearings in the Superior Court, including an evidentiary hearing in August 2006, which was followed by SVF's motion to vacate the easement based on unclean hands on the part of the Ballards.[5]

The trial justice conducted two views of the easement; the first was an inspection of the terrain and the location, as set forth in the recorded survey. On April 22, 2005, after the first view, the Superior Court justice declined to relocate the easement, concluding that it was laid out in what was determined to "be a suitable place" as the prior trial justice and commissioner balanced considerations of safety, the environment, and the concern for the animals that inhabit the property. He also saw no hazards for anyone who would be driving a farm vehicle, "such as a pickup truck or a tractor over the course that has been outlined." He continued the case for another hearing. The Ballards never raised an objection. However, on or about May 31, 2005, in the midst of the hearings on the Rule 60(b) motion, the Ballards filed count 7 of their counterclaim seeking injunctive relief so that the Ballards could undertake improvements to their easement in order "to fulfill their rights in the easement for full, unimpeded passage, both pedestrian and vehicular." (Emphasis added.) Count 7 alleged that the Hamiltons have prevented or thwarted them from improving their easement, and they sought an injunction

---

[5] This ruling summarily denying this motion is set forth in the January 30, 2007, order.

against further interference with the Ballards' efforts to improve the easement. Meanwhile, their Rule 60(b) motion continued to be addressed by the trial justice.

The case took another turn, however, on June 27, 2005, when SVF volunteered to obtain the permits and install a farm road providing reasonable access to the Ballards. The Ballards agreed, and on August 11, 2005, an order entered that included the following:

> "1. SVF Foundation shall provide reasonable access to the defendants as soon as practicable over the access easement, described in the Waterman Class I survey commissioned by Order of this Court, by clearing existing vegetation and creating a farm-type road as described by the Court during the colloquy at [the June 27, 2005] hearing.

> "2. SVF Foundation shall file with the Rhode Island Department of Environmental Management and the City of Newport Critical Area Review Committee, on or before July 5, 2005, applications for permits and/or approvals, as required, for the creation of said access. SVF Foundation should, in the interest of conciliation, provide the defendants with a copy of the initial applications but is not ordered to supply the Ballards with all plans submitted for approval.

> "3. If, at the end of construction of said farm-type road, the Ballads feel that access is not reasonable for their farm vehicles, they may petition the Court to review the access that has been created pursuant to this order.

> "4. The parties shall have a telephone conference with the Court, on July 18, 2005 to arrange for a further status conference regarding the access easement is [sic] necessary."

Although a year passed before the trial justice saw the parties again, there was no armistice. SVF undertook permitting and construction of the access easement in accordance with the original metes and bounds description. A farm road was constructed with a ten-foot roadbed that was approved by the Rhode Island Department of Environmental Management. The Ballards obtained relief under Rule 60(b)—reasonable access for the purpose for which the easement was intended. At the end of the construction in spring 2006, the farm road was ten feet

- 21 -

wide, and the gates were ten feet wide—a width that SVF contends is "virtually identical to the gates * * * used on [the Ballards'] property." The Ballards were not satisfied, and the focus of the next dispute was the width of the gates.

The Ballards argued that they planned to acquire a tractor with a wheelbase of approximately thirteen-and-a-half feet that would not fit through the gates. At a hearing on July 7, 2006, an issue arose as to whether the Ballards had alerted SVF that it needed wider gates to accommodate the industrial tractor that they intended to purchase. The Ballards filed a motion to compel compliance with a subpoena seeking production of the engineering records from the firm that SVF retained for the permitting. The trial justice denied the motion to compel without prejudice, declaring that it could be submitted at a later time. This motion was never resubmitted.[6] The trial justice scheduled an evidentiary hearing concerning the tractor and the gates.

A two-day evidentiary hearing was held on August 8 and 9, 2006; Ballard and his caretaker testified about equipment they were contemplating and their desire to cut back the vegetation along the new farm road, to a width of fifteen feet.[7] Hamilton testified that he did not want to install fifteen-foot gates for access over a ten-foot farm road, because he feared that someone would drive a larger vehicle over the farm road and intrude upon the wetlands. At the conclusion of this hearing, the trial justice questioned the Ballards' good faith.[8] The trial justice made a second visit to the site on August 29, 2006, and he viewed the farm road, the terrain, and the gates.

---

[6] In January 2007, counsel for the Ballards argued that the motion to compel production was pending before the trial justice. It was not.

[7] Apparently this was impossible in various places because of wetlands, large trees, ledge, and a historic wall.

[8] This appears to have been the impetus for the motion to vacate the easement based on unclean hands.

On January 17, 2007, he conducted a final hearing, and, on January 30, 2007, he issued an order denying any further relief. It is this order which the majority characterizes as "interlocutory in nature."

What is clear from the record in this case is that the battle of the easement and the gates and the issue of reasonable access was fought long and hard in the Superior Court and culminated in the January 2007 order that the majority has classified as "interlocutory in nature." It is not.

Significantly, on January 17, 2007, during the final hearing, the trial justice made several important findings of fact, including those related to the farm road and a demonstration utilizing a mockup of a tractor that the Ballards were contemplating purchasing. Those findings specifically were incorporated into the January 2007 order and stated that passage by a tractor with a wheelbase of more than thirteen feet was impossible. The trial justice found that the existing terrain on the easement was not conducive to that equipment:

> "It was clear to me, and I so found based upon the view, that a tractor that size cannot be supported by that easement. The terrain is not flat in all places, and, indeed, on some places it is pitched in an angle of, I would say, 30 degrees, * * * it is an angle, it is not a flat surface, and rocks and shrubs and thicket and trees would make it impossible for a tractor that size to get through the easement. Certainly, it could not do so safely. Yet, at the same time I find that Mr. Ballard can mow his fields by using the current tractor that he has * * *.
>
> "* * *
>
> "[T]herefore, the 10-foot gates through which the Ballard[s'] tractor can pass without difficulty, that does not inhibit the reasonable and fair use of the easement by the Ballards. So, on that particular point I think the record shouts out the conclusion I've just made and there is no need for a trial on the easement issue.
>
> "* * *

- 23 -

"The easement shall stand along that road and with the existing gates." (Emphases added.)

When counsel for the Ballards asked the trial justice for "an articulation of <u>exactly what the [C]ourt is ordering</u> so we'll both have something to look at[,]" the Superior Court justice declared with finality: "<u>[T]he 10-foot gates do not inhibit the Ballards' use of that easement, and, therefore, they may remain</u>." (Emphases added.) SVF's counsel inquired, "[i]t is uncontested, I gather * * * that the improved farm road that you've cited is a reasonable passageway, and, therefore <u>that issue is also waived</u>." (Emphasis added.) The final word from the trial justice should convince everyone that the January 2007 order was not "interlocutory in nature":

> "<u>Yes</u>. <u>I didn't realize that anybody suggested otherwise</u>. I know the Ballards would have preferred another course, but the existing one is—puts [SVF] in compliance with its obligations relative to earlier Court [o]rders and the maintenance of that road as the easement." (Emphasis added.)

The Ballards did not object. The January 2007 order incorporated these findings. The order recites that the matter came before the Superior Court <u>four</u> times <u>after the farm road was constructed</u>, "on July 7, August 8 and 9, 2006 and January 17, 2007[,]" and "after considering testimony, viewing the property and reviewing the memoranda of law," the Superior Court ordered:

> "1.    SVF Foundation has constructed a farm road providing reasonable access to the defendants within the access easement described in Waterman Class I Survey commissioned by the Court on January 16, 2004 dated and April 23, 2004 and thereby satisfied this Court's previous orders.
>
> "2.    Based on the evidence presented at the hearing, and the Court's views of the subject property, the Court finds that the 10 foot gates do not impinge on the Ballards' reasonable use of the access easement and <u>the Court incorporates by reference its comments from the bench on January 17, 2007</u>.

"3.     SVF Foundation's motion to eliminate the easement is denied.[9]

"4.     The file shall be transferred back to Newport County for trial <u>on only those remaining issues and counts which are unrelated to matters already raised before this Court regarding the access easement</u>."  (Emphases added.)

In my opinion, for this Court to characterize the January 2007 order as "interlocutory in nature" is incorrect and will lead to needless and confusing litigation in Superior Court.  This Court should provide illumination and clarification with respect to just what aspect of this case such an interlocutory order attaches to.  Because the Rule 60(b) motion for relief from judgment filed by the Ballards was the <u>only</u> matter that was before this justice for two years and sought relief from the original and only Rule 54(b) judgment, it was not an interlocutory order.  It was a final order that closed the door on the access easement, along the parameters set forth in the recorded partition survey.  The Ballards obtained relief—<u>the farm road was built</u>.  The Ballards were not satisfied, but they did not appeal.  A petition for writ of certiorari generally is not available to salvage an untimely appeal.

Furthermore, count 7 of the counterclaim was filed <u>after</u> the Rule 60(b) hearings commenced, <u>before</u> SVF was ordered to construct the access easement, and <u>before</u> the ten-foot iron gates were constructed.  Count 7 makes no mention of the gates whatsoever.  Count 7 sets

---

[9] It does not appear that there was any argument or ruling concerning SVF's motion to eliminate the easement during the January 17, 2007, hearing, save for the representation by counsel for the Ballards that the only motions that were before the Court were counsel's motion to enforce the subpoena—that was not pending—and SVF's motion to eliminate the easement based upon unclean hands by the Ballards.  I therefore disagree with the majority's conclusion that the January 17, 2007, hearing "appears to have been held in response to SVF's motion to eliminate the easement."  There is no record support for this assumption.

forth a claim for injunctive relief and consists of four paragraphs, two of which clearly are

moot.[10] Count 7 reads as follows:

> "COUNT VII (Unreasonable Interference with Easement)
>
> "59. The allegations in paragraphs 1 through 58 are incorporated herein as if stated in their entirety.
>
> "60. The Ballards' improvement of the Access Easement is necessary to fulfill their rights in the easement for full, unimpeded passage, both pedestrian and vehicular, between their Lot 404 and Lot 20.
>
> "61. Hamilton's actions to prevent or thwart the Ballards from improving their Access Easement, including her objection to the processing of Ballards' applications with DEM and CARC, constitutes a material impairment and/or unreasonable interference with the Ballards' right to use their access easement for its intended purpose.
>
> "62. Hamilton should be enjoined from further interference with the Ballards' improvement and use of their access easement."

Significantly, during the January 17, 2007, hearing, counsel for the Ballards, in open

court, notified the trial justice that it was his intention

> "to move to amend their counterclaim to include a count concerning the impingement on the easement and have this case brought to a conclusion in the Superior Court in Newport through trial on the multiple counts * * * including the question of whether the gates constitute an unlawful impingement on an easement."

This never happened. This representation amounts to a judicial admission and acknowledgment

that no such claim was pending in Superior Court. This case languished in Newport Superior

Court for another seven years. This circumstance points to the compelling need for this Court to

speak with a clear voice to ensure that, on remand, count 7 of the counterclaim is not transmuted

---

[10] Because SVF constructed the access easement and obtained the necessary permits, after this counterclaim was filed, these allegations are moot.

into a count that was never filed—"a count concerning the impingement on the easement" or evade the consequences of our final judgment rule. During the seven-plus years between the January 2007 order and the summary judgment in this case, no effort was made to amend count 7 to address the width of the gates; nor were any other counts added to the counterclaim.[11]

The trial justice declared that "the record shouts out the conclusion I've just made and there is no need for a trial on the easement issue." The trial justice, who was about to embark upon a well-earned retirement, ordered the return of the file to Newport County, "for trial on only those remaining issues and counts which are unrelated to matters already raised before this Court regarding the access easement." (Emphasis added.) No appeal was taken.

To be sure, this Court denied the Ballards' petition for writ of certiorari, filed several months after the Rule 60(b) order entered. In typical fashion in opposing certiorari, SVF argued, inter alia, that the order was interlocutory; the Ballards responded that count 7 did not relate to the tractor gates.[12] This Court denied certiorari. Parties to actions in our courts and our trial justices ought to be able to rely on the finality of court orders. The burden of unnecessarily relitigating this issue should not be shouldered by the next Superior Court justice to whom this case is assigned. I respectfully submit that the January 2007 order was final, the issue of the access easement was laid to rest, and count 7 is wholly irrelevant to the issues decided during the Rule 60(b) proceeding.

---

[11] SVF states in its brief that the Ballards have filed yet another action in Superior Court, Ballard v. SVF Foundation, NC-2013-499 that includes yet another complaint about the ten-foot gates and the access easement. The case is part of a consolidated appeal that is currently pending in the Supreme Court. Therefore, that case has remained pending for a total of four years.

[12] In his reply memorandum in the petition for certiorari, counsel declared that count 7 "addresses SVF's interference with the Ballard's [sic] efforts to improve the easement rather than its later imposition of constructing gates on the easement roadway." (Emphasis added.)

However, my opinion regarding the finality of the January 2007 order does not lead me to conclude that the summary judgment granted by the trial justice in this case should be affirmed. I reach this conclusion because I agree with the majority that, in the context of this case, summary judgment, based on the January 2007 order, was not appropriate, respectfully.

Clearly, count 7 may be moot, at least in part, because it was filed before the Rule 60(b) hearings concluded, the farm road was built, and the gates were installed. Additionally, in granting summary judgment, the hearing justice, although homing in on the fact that, during the seven-year interregnum between the 2007 order and the hearing before him, nothing had changed on Edgehill, he nonetheless failed to set forth any reasons for granting summary judgment. I agree with the majority, however, that the law of the case doctrine is quite viable on remand, and the issue of mootness also is in play. What is abundantly clear is that the issue of the location of the easement and the width of the gates, in my opinion, cannot be relitigated. Consequently, I respectfully concur in and dissent from the opinion of the majority.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Dorrance H. Hamilton et al. v. Carol C. Ballard et al. |
| **Case Number** | No. 2014-323-Appeal.<br>(NC 00-340) |
| **Date Opinion Filed** | June 6, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Walter R. Stone |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Stephen J. MacGillivray, Esq. |
| | For Defendants:<br><br>R. Daniel Prentiss, Esq. |